# Exhibit 1

**Exhibit 1**

# SUMMONS



E-FILED | 3/10/2026 3:13 PM
CC-05-2026-C-17
Brooke County Circuit Clerk
Glenda Brooks

## IN THE CIRCUIT COURT OF BROOKE COUNTY, WEST VIRGINIA
### Weirton Medical Center, Inc. v. Vigilant Insurance Company

Service Type:    Circuit Clerk - Certified Mail - Including Copy Fee

NOTICE TO:    Vigilant Insurance Company, c/o CT Corporation System, 5098 Washington St. W. Ste. 407, CHARLESTON, WV 25313

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY:

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

SERVICE:

3/10/2026 3:13:28 PM                    /s/ Glenda Brooks
　　　　　Date                                    Clerk

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint t _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to the individual's dwelling or usual place of abode to _____, someone who is eighteen (18) years of age or above and resides there.

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____, an agent or attorney-in-fact authorized by appointment or statute to receive service of process for the individual.

☐ I have reviewed documentation authorizing the above-named person to accept service on behalf of the individual named on the summons.

☐ I have not reviewed documentation authorizing the above-named person to accept service on behalf of the individual named on the summons.

☐ Not Found in Bailiwick

_____            _____
　　　　Date                                    Server's Signature

# SUMMONS

**COPY**

E-FILED | 3/23/2026 4:36 PM
CC-05-2026-C-17
Brooke County Circuit Clerk
Glenda Brooks

## IN THE CIRCUIT COURT OF BROOKE COUNTY, WEST VIRGINIA
### Weirton Medical Center, Inc. v. Vigilant Insurance Company

Service Type:    Secretary of State - Certified - Including Copy Fee

NOTICE TO:    Chubb National Insurance Company, 202B HALLS MILL ROAD, WHITEHOUSE STATION, NJ 08889

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY:

Carl Frankovitch, 337 Penco Rd, , Weirton, WV 26062

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

SERVICE:

3/23/2026 4:36:55 PM    /s/ Glenda Brooks

Date    Clerk

By RBowman Deputy

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint t _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to the individual's dwelling or usual place of abode to _____ , someone who is eighteen (18) years of age or above and resides there.

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____ , an agent or attorney-in-fact authorized by appointment or statute to receive service of process for the individual.

☐ I have reviewed documentation authorizing the above-named person to accept service on behalf of the individual named on the summons.

☐ I have not reviewed documentation authorizing the above-named person to accept service on behalf of the individual named on the summons.

☐ Not Found in Bailiwick

_____    _____
Date    Server's Signature

E-FILED | 2/25/2026 10:58 AM
CC-05-2026-C-17
Brooke County Circuit Clerk
Glenda Brooks

## IN THE CIRCUIT COURT OF BROOKE COUNTY, WEST VIRGINIA

WEIRTON MEDICAL CENTER, INC.

        **Plaintiff,**

v.

VIGILANT INSURANCE COMPANY,
and CHUBB NATIONAL INSURANCE
COMPANY,

        **Defendants.**

CIVIL ACTION NO. _____

JUDGE: _____

## COMPLAINT

**COMES NOW** the Plaintiff, Weirton Medical Center, Inc., by and through undersigned counsel, and for its Complaint against the Defendants, Vigilant Insurance Company and Chubb National Insurance Company (collectively, "**Defendants**"), state and aver as follows:

### PARTIES

1.    Plaintiff Weirton Medical Center, Inc., ("**WMC**" or "**Plaintiff**") is a West Virginia non-profit corporation operating a hospital facility located at 601 Colliers Way, Weirton, Brooke County, West Virginia (the "**Premises**").

2.    Defendant Vigilant Insurance Company ("**Vigilant**") is a corporation incorporated under the laws of the State of New York, licensed to conduct business in the State of West Virginia and maintains a principal place of business in New York, New York.

3.    Defendant Chubb National Insurance Company ("**Chubb**") is a corporation organized under the laws of the State of New Jersey, licensed to conduct business in the State of West Virginia and maintains a principal place of business in Whitehouse Station, New Jersey.

4.    Upon information and belief, at all relevant times, Chubb, d/b/a Chubb Group of Insurance companies and Chubb North America Claims, acted as claims administrator and/or agent

1

for Vigilant and participated in the investigation, adjustment, supervision, and denial of WMC's claim.

5.     At all relevant times, Defendants acted by and through their agents, employees, adjusters, and representatives and within the course and scope of those relationships.

6.     Vigilant is responsible for the acts and omissions of Chubb and other participants acting as Vigilant's agents in claims handling.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action pursuant to Article VIII, §6 of the West Virginia Constitution and W.Va. Code § 51-2-2, as the amount in controversy exceeds the jurisdictional minimum for circuit court and the claims asserted arise under the laws of the State of West Virginia.

8.     This Court has personal jurisdiction over all Defendants because they are authorized to do business in, and/or have purposefully availed themselves of the privilege of conducting business in the State of West Virginia, including within Brooke County, and the acts and omissions giving rise to the causes of action occurred in whole or in part in West Virginia.

9.     Venue is proper in Brooke County pursuant to W. Va. Code § 56-1-1 because the insured Premises are located in Brooke County, the loss and impairment occurred in Brooke County, and Defendants transact business in Brooke County and/or caused injury in Brooke County.

## FACTUAL ALLEGATIONS

10.     At all relevant times, Plaintiff was insured under a property insurance policy issued by Vigilant, Policy No. 000036064085 (the "**Policy**"), which was in full force and effect during the events described herein.

11.    The Policy provides property coverage and time-element coverage, including Business Income with Extra Expense coverage and Loss of Utilities coverage applicable when the impairment of operations results from direct physical loss or damage to service property necessary to supply the Premises with water.

12.    The Policy is an open-peril ("all-risk") form providing coverage for direct physical loss or damage caused by or resulting from a peril not otherwise excluded.

13.    WMC paid all premiums due and complied with all material Policy conditions, including timely notice and cooperation. All conditions precedent to coverage and suit have occurred, have been satisfied, or were waived, excused, or rendered futile by Defendants' conduct.

14.    During the winter of 2024–2025, the municipal water distribution system serving Weirton, West Virginia experienced widespread failures that disrupted water service to residents and businesses throughout the City, including Weirton Medical Center.

15.    The Public Service Commission ("**PSC**") investigation into the winter 2024–2025 Weirton water-system failures concluded that the disruption was caused by or resulted from a combination of factors, specifically including extreme cold temperatures and large temperature swings, which produced widespread physical failures in the municipal distribution system, including breaks, ruptures, and leaks in water service lines and related distribution equipment, resulting in a loss of water service and/or impairment of water pressure and potability at the Premises.

16.    The foregoing constitutes direct physical loss or damage to "service property" and/or other utility property necessary to supply the Premises with water, thereby triggering coverage under the Policy's time-element provisions, including Loss of Utilities and Extra Expense coverage.

17.     During the disruption periods, WMC, an acute-care hospital, required reliable water service to maintain clinical operations and patient safety and therefore incurred necessary and reasonable emergency extra expenses.

18.     Specifically, WMC was required to procure emergency bulk water supply from December 20, 2024 to January 3, 2025 and from January 21, 2025 to February 6, 2025, incurring direct out-of-pocket expenses totaling $477,860.00 (the "**Claimed Loss**").

19.     These expenses exceeded WMC's normal operating expenses and were incurred to reduce the impact of the interruption and continue operations, constituting covered "extra expense" under the Policy.

20.     WMC provided timely notice of its claim and additional information reflecting the continuing disruption and mitigation expenses.

21.     Defendants delayed adjustment and deferred making a coverage determination, including by requiring WMC to await external proceedings and materials before Defendants would meaningfully act.

22.     Despite representing that they were awaiting the PSC findings to complete their coverage determination, Defendants thereafter asked basic causation questions and requested information already addressed in the PSC record, evidencing that Defendants did not adequately review or analyze the very materials they claimed were necessary to decide coverage.

23.     Defendants did not conduct a full, fair, and prompt investigation of coverage and causation, including failing to retain appropriate technical expertise or conduct an independent causation analysis of the municipal system failures.

24.     Defendants denied and/or refused to pay the Claimed Loss on the basis of a wear-and-tear exclusion, notwithstanding the PSC's findings that the line breaks and system failure resulted from extreme cold temperatures and temperature swings.

25.     Defendants' denial and/or delay also attempted to recast the January 21 – February 6, 2025 period as requiring a "separate claim" submission, despite Defendants' contemporaneous notice of the disruption and months of handling the matter under the same claim number. Re-submission would have been futile because Defendants' denial rationale relied on wear and tear and would have been applied identically.

## COUNT I

26.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

27.     The Policy provides time-element coverage, including Loss of Utilities coverage when impairment of operations results from direct physical loss or damage to utility service property necessary to supply the Premises with water.

28.     The municipal distribution system sustained direct physical loss or damage that caused impairment of water supply to the Premises.

29.     The PSC found the failures resulted from a combination of factors including extreme cold temperatures and large temperature swings, which are not "wear and tear."

30.     Even if old piping or deferred maintenance contributed, the Policy's wear-and-tear exclusion does not contain anti-concurrent causation language barring coverage where a covered peril is also a cause of the loss.

31.  Further, the wear-and-tear exclusion contains an ensuing-loss carve-back for ensuing loss or damage caused by or resulting from a specified peril or water, preserving coverage for water-related ensuing loss and impairment following physical system damage.

32.  Defendants' denial improperly treats background vulnerability as the operative cause of loss, minimizes or ignores the documented role of extreme cold and temperature swings in triggering the system's physical failures, and then stretches and misapplies exclusions in an effort to nullify the Policy's time-element coverages, including Loss of Utilities and Extra Expense, that were purchased precisely to insure against utility-service interruptions caused by physical damage to service property supplying the Premises.

33.  An actual controversy exists between WMC and Defendants regarding coverage under the Policy and Defendants' obligations under the Policy's provisions.

34.  WMC seeks a declaration pursuant to W. Va. Code § 55-13-1, *et seq.* that the Policy provides coverage for the Claimed Loss and that Defendants' denial and/or nonpayment violates the Policy.

## **COUNT II**

35.  Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

36.  The Policy is a valid and enforceable contract between WMC and Vigilant.

37.  Plaintiff satisfied all material obligations and conditions precedent under the Policy.

38.  Plaintiff submitted a timely and valid claim for benefits under the Policy.

39.    Defendants breached the Policy by denying and failing to pay covered benefits owed for the Claimed Loss of $477,860.00 and by failing to provide the benefits promised under the Policy's provisions.

40.    Defendants' failure to provide payment constitutes a breach of their contractual obligations to the Plaintiff under the Policy.

41.    As a direct and proximate result of Defendants' breach, Plaintiff has suffered uncompensated losses, has been forced to initiate litigation to obtain benefits it is contractually entitled to, and has incurred attorney's fees, costs, and delay-related harm.

## COUNT III

42.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

43.    Defendants owed Plaintiff a duty of good faith and fair dealing in the investigation, evaluation, and resolution of Plaintiff's first-party claim.

44.    Defendants breached that duty by, among other things, delaying and stonewalling the claim; failing to conduct a full and fair investigation; deferring decision-making while claiming to await external proceedings; misapplying exclusions to defeat the coverage grants; and advancing shifting rationales and late technical positions designed to avoid payment.

45.    Defendants further breached that duty by denying payment of covered benefits without a reasonable basis and without a full, fair, and prompt investigation.

46.    Defendants' conduct constitutes a violation of their duty of good faith and fair dealing owed to its insureds and violates the standards established by the West Virginia Supreme Court in *Hayseeds v. State Farm*, 352 S.E.2d 73 (W. Va. 1986), and *Miller v. Fluharty*, 500 S.E.2d 310 (W. Va. 1997).

7

47.    Defendants' failure to tender benefits owed under the Policy was motivated by Defendants' own financial self-interest and demonstrates a willful, wanton, and reckless disregard of Plaintiff's rights.

48.    Defendants' conduct constitutes actual malice or conscious, reckless, and outrageous indifference sufficient to support an award of punitive damages under West Virginia law.

49.    As a direct and proximate result of Defendants' bad faith, Plaintiff has suffered uncompensated losses, has been forced to initiate litigation to obtain benefits it is contractually entitled to, and has incurred attorney's fees, costs, and delay-related harm.

50.    Plaintiff is therefore entitled to recover all damages available under West Virginia law for Defendants' bad faith, including: (i) payment of the covered benefits due under the Policy; (ii) consequential damages proximately caused by Defendants' denial and delay; (iii) reasonable attorney's fees, net economic loss caused by delay, and damages for aggravation and inconvenience as recognized in *Hayseeds*; (iv) prejudgment and post-judgment interest; and (v) an award of punitive damages in an amount sufficient to punish Defendants and deter similar misconduct.

## <u>COUNT IV</u>

51.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

52.    Defendants are engaged in the business of insurance and are subject to the West Virginia Unfair Trade Practices Act, W.Va. Code § 33-11-4(9) ("**UTPA**").

53.    Defendants violated UTPA, W. Va. Code § 33-11-4(9) by engaging in unfair claim settlement practices, including but not limited to:

a.    Failing to adopt and implement reasonable standards for prompt investigation of claims;

b.    Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

c.    Failing to acknowledge and act reasonably promptly upon communications regarding claims;

d.    Refusing to pay claims without conducting a reasonable investigation based upon all available information;

e.    Failing to affirm or deny coverage within a reasonable time after proof of loss statements were submitted;

f.    Not attempting in good faith to effectuate prompt, fair, and equitable settlement of a claim in which liability had become reasonably clear;

g.    Compelling insureds to institute litigation to recover amounts due under the Policy; and

h.    Failing to promptly provide a reasonable explanation of the basis for denial or delay.

54.    Defendants' violations were committed with such frequency as to constitute a general business practice.

55.    As a direct and proximate result of Defendants' violations of the West Virginia Unfair Trade Practices Act, W. Va. Code § 33-11-4(9), Plaintiff has suffered damages, including economic loss, consequential damages, and other compensatory damages recoverable under West Virginia law, and Plaintiff is entitled to recover such damages and to seek punitive damages in an amount sufficient to punish Defendants and deter similar misconduct.

9

## COUNT V

56.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

57.     Punitive damages are sought as a remedy arising from and incidental to Defendants' common-law bad faith and violations of the West Virginia Unfair Trade Practices Act alleged herein.

58.     Under West Virginia law, punitive damages may be awarded in a civil action where the defendant's conduct demonstrates actual malice, fraud, oppression, or a willful, wanton, or reckless disregard for the rights of others.

59.     Upon information and belief, Defendants systematically employ claim-handling tactics that delay and reduce payments to insureds, such as delaying, underpaying, or denying covered claims, and requiring litigation to obtain benefits owed.

60.     Defendants' claim-handling approach routinely includes prolonged investigations, shifting rationales for denial, and demands for unnecessary information, and such tactics increase the burden and expense to insureds and function to pressure insureds to abandon or discount valid claims.

61.     These tactics are consistent with a claims strategy designed to reduce paid losses and preserve underwriting profitability, rather than to honor coverage as promised.

62.     In this case, Plaintiff submitted a covered claim for losses arising from interruption and/or impairment of water service affecting Plaintiff's operations, including losses and expenses incurred to maintain clinical operations and patient safety.

63.     Despite Plaintiff's timely notice and provision of information supporting coverage, Defendants failed and refused to promptly acknowledge and pay covered benefits.

10

64.     Instead of conducting a full, fair, and prompt investigation focused on the Policy terms and the facts of the loss, Defendants delayed adjusting the claim and deferred making a coverage determination, including by requiring Plaintiff to await external proceedings and materials before Defendants would meaningfully act.

65.     Defendants' prolonged delay was not reasonably necessary to determine coverage because the relevant issue was whether the water service interruption and resulting loss fell within the Policy's coverage grants and whether any exclusion actually applied, all of which Defendants could and should have evaluated promptly and in good faith.

66.     Defendants' conduct was designed to postpone payment, increase frictional costs, and exhaust the insured's resources, rather than to arrive at a timely and fair coverage decision.

67.     Defendants' failure to promptly pay covered benefits forced Plaintiff to incur additional costs, expend administrative resources, and suffer continued uncertainty regarding indemnification for losses that were precisely the type of risk Plaintiff paid Defendants to insure.

68.     Defendants' actions in this case were consistent with the broader claims practices described above and constitute bad faith and unfair claims settlement practices under West Virginia law.

69.     Defendants' denial and/or delay was not based on a genuine, good-faith dispute regarding coverage, but instead was the product of cost-containment incentives, institutional priorities inconsistent with Defendants' duties to insureds, and a corporate claims culture that tolerates delay and denial tactics to reduce claim payouts.

70.     Defendants undertook this conduct with knowledge that Plaintiff, Weirton Medical Center, Inc., is a hospital providing essential services, and that delays in claim payment predictably impose outsized hardship and operational disruption, yet persisted in delay and stonewalling.

11

71.    Defendants' conduct demonstrates actual malice and/or a conscious, reckless, and outrageous indifference to the rights and welfare of Plaintiff, warranting punitive damages to punish Defendants and deter similar misconduct toward other West Virginia policyholders.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Weirton Medical Center, Inc., respectfully request that the Court enter judgment in its favor and against Defendants, Vigilant Insurance Company and Chubb National Insurance Company, jointly and severally, and award the following relief:

A.    An award of compensatory damages, including the insurance benefits due and owing under the Policy in the amount of $477,860.00, together with such other compensatory and consequential damages proximately caused by Defendants' breach, delay, and wrongful claim handling as are proven at trial;

B.    An award of *Hayseeds* damages, including reasonable attorney's fees, net economic loss caused by delay in settlement, and damages for aggravation and inconvenience, together with taxable costs;

C.    Compensatory and consequential damages proximately caused by Defendants' violations of the West Virginia Unfair Trade Practices Act, W. Va. Code § 33-11-4(9), including increased costs and expenses, including increased attorney's fees, attributable to such unfair claim settlement practices;

D.    Pre-judgment and post-judgment interest on all sums awarded, at the applicable legal rate(s, from the date(s) such amounts were incurred, became due and payable, or from such other date(s) as permitted by law;

E.    A declaration that the Policy provides coverage for the losses and extra expenses alleged herein, including the $477,860.00 Claimed Loss;

12

F.    Punitive damages in an amount sufficient to punish Defendants and deter similar misconduct, upon the requisite showing under West Virginia law; and

G.    Such other and further relief as the Court deems just and proper.

WEIRTON MEDICAL CENTER, INC.,
Plaintiff

By _____
        Counsel

Carl A. Frankovitch, Esq. (WV ID# 12150)
Casey Jo Wynn, Esq. (WV ID# 13282)
Adriana C. DiMatteis, Esq. (WV ID #14445)
FRANKOVITCH, ANETAKIS
SIMON, DECAPIO & PEARL, LLP
337 Penco Road
Weirton, WV 26002
Tel.: (304) 723-4400
Fax: (304) 723-5892
Email: CFrankovitch@faslaw.com
       CWynn@faslaw.com
       ADimatteis@faslaw.com

13