**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**WHEELING DIVISION**

**WEIRTON MEDICAL CENTER, INC.**

      **Plaintiff,**                  **Civil Action No. 5:26-CV-79**

v.                              **Hon. Chief Judge Thomas S. Kleeh**

**VIGILANT INSURANCE COMPANY,**
**and CHUBB NATIONAL INSURANCE**
**COMPANY,**

      **Defendants.**

**FIRST AMENDED COMPLAINT**

**COMES NOW** the Plaintiff, Weirton Medical Center, Inc., by and through undersigned counsel, and, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, hereby files this First Amended Complaint as a matter of course against Defendants Vigilant Insurance Company and Chubb National Insurance Company (collectively, "**Defendants**"), and alleges and states as follows:

**PARTIES**

1.      Plaintiff Weirton Medical Center, Inc., ("**WMC**" or "**Plaintiff**") is a West Virginia non-profit corporation operating a hospital facility located at 601 Colliers Way, Weirton, Brooke County, West Virginia (the "**Premises**").

2.      Defendant Vigilant Insurance Company ("**Vigilant**") is a corporation incorporated under the laws of the State of New York, licensed to conduct business in the State of West Virginia and maintains a principal place of business in New York, New York.

3.      Defendant Chubb National Insurance Company ("**Chubb**") is a corporation organized under the laws of the State of New Jersey, licensed to conduct business in the State of West Virginia and maintains a principal place of business in Whitehouse Station, New Jersey.

1

4. Upon information and belief, at all relevant times, Chubb, d/b/a Chubb Group of Insurance companies and Chubb North America Claims, acted as claims administrator and/or agent for Vigilant and participated in the investigation, adjustment, supervision, and denial of WMC's claim.

5. At all relevant times, Defendants acted by and through their agents, employees, adjusters, and representatives and within the course and scope of those relationships.

6. Vigilant is responsible for the acts and omissions of Chubb and other participants acting as Vigilant's agents in claims handling.

7. Upon information and belief, Vigilant Insurance Company and Chubb National Insurance Company consciously conspired and deliberately pursued a common plan or design to commit the tortious acts and omissions alleged herein, including delaying, denying, and misrepresenting coverage and engaging in unfair claim settlement practices to deprive Plaintiff of benefits owed; accordingly, to the extent permitted by W. Va. Code § 55-7-13c, Vigilant and Chubb are jointly liable for the damages proximately caused by such concerted conduct.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to Article VIII, §6 of the West Virginia Constitution and W.Va. Code § 51-2-2, as the amount in controversy exceeds the jurisdictional minimum for circuit court and the claims asserted arise under the laws of the State of West Virginia.

9. This Court has personal jurisdiction over all Defendants because they are authorized to do business in, and/or have purposefully availed themselves of the privilege of conducting business in the State of West Virginia, including within Brooke County, and the acts and omissions giving rise to the causes of action occurred in whole or in part in West Virginia.

2

10.     Venue is proper in Brooke County pursuant to W. Va. Code § 56-1-1 because the insured Premises are located in Brooke County, the loss and impairment occurred in Brooke County, and Defendants transact business in Brooke County and/or caused injury in Brooke County.

## FACTUAL ALLEGATIONS

11.     At all relevant times, Plaintiff was insured under a property insurance policy issued by Vigilant, Policy No. 000036064085 (the "**Policy**"), which was in full force and effect during the events described herein.

12.     The Policy provides property coverage and time-element coverage, including Business Income with Extra Expense coverage and Loss of Utilities coverage applicable when the impairment of operations results from direct physical loss or damage to service property necessary to supply the Premises with water.

13.     The Policy is an open-peril ("all-risk") form providing coverage for direct physical loss or damage caused by or resulting from a peril not otherwise excluded.

14.     WMC paid all premiums due and complied with all material Policy conditions, including timely notice and cooperation. All conditions precedent to coverage and suit have occurred, have been satisfied, or were waived, excused, or rendered futile by Defendants' conduct.

15.     During the winter of 2024–2025, the municipal water distribution system serving Weirton, West Virginia experienced widespread failures that disrupted water service to residents and businesses throughout the City, including Weirton Medical Center.

16.     The Public Service Commission ("**PSC**") investigation into the winter 2024–2025 Weirton water-system failures concluded that the disruption was caused by or resulted from a combination of factors, specifically including extreme cold temperatures and large temperature

3

swings, which produced widespread physical failures in the municipal distribution system, including breaks, ruptures, and leaks in water service lines and related distribution equipment, resulting in a loss of water service and/or impairment of water pressure and potability at the Premises.

17.     The foregoing constitutes direct physical loss or damage to "service property" and/or other utility property necessary to supply the Premises with water, thereby triggering coverage under the Policy's time-element provisions, including Loss of Utilities and Extra Expense coverage.

18.     During the disruption periods, WMC, an acute-care hospital, required reliable water service to maintain clinical operations and patient safety and therefore incurred necessary and reasonable emergency extra expenses.

19.     Specifically, WMC was required to procure emergency bulk water supply from December 20, 2024 to January 3, 2025 and from January 21, 2025 to February 6, 2025, incurring direct out-of-pocket expenses totaling $477,860.00 (the "**Claimed Loss").**

20.     These expenses exceeded WMC's normal operating expenses and were incurred to reduce the impact of the interruption and continue operations, constituting covered "extra expense" under the Policy.

21.     WMC provided timely notice of its claim and additional information reflecting the continuing disruption and mitigation expenses.

22.     Defendants delayed adjustment and deferred making a coverage determination, including by requiring WMC to await external proceedings and materials before Defendants would meaningfully act.

23.      Despite representing that they were awaiting the PSC findings to complete their coverage determination, Defendants thereafter asked basic causation questions and requested information already addressed in the PSC record, evidencing that Defendants did not adequately review or analyze the very materials they claimed were necessary to decide coverage.

24.      Defendants did not conduct a full, fair, and prompt investigation of coverage and causation, including failing to retain appropriate technical expertise or conduct an independent causation analysis of the municipal system failures.

25.      Defendants denied and/or refused to pay the Claimed Loss on the basis of a wear-and-tear exclusion, notwithstanding the PSC's findings that the line breaks and system failure resulted from extreme cold temperatures and temperature swings.

26.      Defendants' denial and/or delay also attempted to recast the January 21 – February 6, 2025 period as requiring a "separate claim" submission, despite Defendants' contemporaneous notice of the disruption and months of handling the matter under the same claim number. Re-submission would have been futile because Defendants' denial rationale relied on wear and tear and would have been applied identically.

## COUNT I

27.      Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

28.      The Policy provides time-element coverage, including Loss of Utilities coverage when impairment of operations results from direct physical loss or damage to utility service property necessary to supply the Premises with water.

29.      The municipal distribution system sustained direct physical loss or damage that caused impairment of water supply to the Premises.

5

30. The PSC found the failures resulted from a combination of factors including extreme cold temperatures and large temperature swings, which are not "wear and tear."

31. Even if old piping or deferred maintenance contributed, the Policy's wear-and-tear exclusion does not contain anti-concurrent causation language barring coverage where a covered peril is also a cause of the loss.

32. Further, the wear-and-tear exclusion contains an ensuing-loss carve-back for ensuing loss or damage caused by or resulting from a specified peril or water, preserving coverage for water-related ensuing loss and impairment following physical system damage.

33. Defendants' denial improperly treats background vulnerability as the operative cause of loss, minimizes or ignores the documented role of extreme cold and temperature swings in triggering the system's physical failures, and then stretches and misapplies exclusions in an effort to nullify the Policy's time-element coverages, including Loss of Utilities and Extra Expense, that were purchased precisely to insure against utility-service interruptions caused by physical damage to service property supplying the Premises.

34. Upon information and belief, at all relevant times, Defendant Chubb acted as claims administrator and/or agent for Vigilant and participated in the investigation, adjustment, supervision, and denial of WMC's claim, as aforesaid.

35. Chubb, acting on behalf of Vigilant and within the scope of its claims-handling authority, made, approved, and/or materially participated in the determination to deny coverage, and communicated and continues to maintain the position that no coverage is owed for Plaintiff's claimed loss.

36. Defendants Vigilant and Chubb each contend that the Policy affords no coverage for Plaintiff's claim, while Plaintiff contends that the Policy provides coverage and that Defendant

Vigilant is obligated to pay covered benefits. This dispute concerns the interpretation and application of the Policy's coverage grants and the exclusions and defenses asserted or reserved by Defendants.

37.    An actual, present, and justiciable controversy therefore exists between Plaintiff and Defendants Vigilant and Chubb regarding the parties' rights and obligations under the Policy and Defendants' coverage position and denial, and declaratory relief is necessary to resolve that controversy and guide the parties' conduct.

38.    WMC seeks a declaration pursuant that the Policy provides coverage for the Claimed Loss and that Defendants' denial and/or nonpayment violates the Policy.

## COUNT II

39.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

40.    This Count II asserts a claim for breach of the Policy, and includes the related, derivative allegations of bad-faith claim handling, which are necessarily subsumed within the underlying contractual claim for policy benefits. *Findley, v. North Light Specialty Insurance Co.,* No. 2:24-CV-10, 2026 WL 884022, at *4 (N.D.W. Va. Mar. 31, 2026)

41.    The Policy is a valid and enforceable contract between WMC and Vigilant.

42.    Plaintiff satisfied all material obligations and conditions precedent under the Policy, or such obligations were waived, excused, or rendered futile by Defendants' conduct.

43.    Plaintiff submitted a timely and valid claim for benefits under the Policy for the Claimed Loss.

44.     Defendant Vigilant breached the Policy by denying and failing to pay covered benefits owed for the Claimed Loss of $477,860.00 and by failing to provide the benefits promised under the Policy's provisions.

45.     West Virginia law implies into every contract, including the Policy, a covenant of good faith and fair dealing. *Findley*, 2026 WL 884022 at *4.

46.     Pursuant to such covenant of good faith and fair dealing inherent in the Policy, Defendant Vigilant, acting by and through its claims handler and agent, Defendant Chubb, was required to handle Plaintiff's claim fairly, honestly, and in good faith, and to give Plaintiff's interests equal consideration in the adjustment and resolution of the claim.

47.     Vigilant breached said implied covenant of good faith and fair dealing and handled the claim in bad faith by, among other things, delaying and stonewalling the claim; failing to conduct a full, fair, and prompt investigation; deferring decision-making while claiming to await external proceedings and materials; misapplying exclusions to defeat the Policy's coverage grants; and advancing shifting rationales and late technical positions designed to avoid payment.

48.     Defendant Vigilant further breached the Policy and handled the claim in bad faith by denying payment of covered benefits without a reasonable basis and without a full, fair, and prompt investigation.

49.     Vigilant's conduct, as carried out by and through Defendant Chubb in the claim-handling process, violates the standards established by the West Virginia Supreme Court of Appeals in *Hayseeds v. State Farm Fire & Casualty*, 352 S.E.2d 73 (W. Va. 1986), and *Miller v. Fluharty*, 500 S.E.2d 310 (W. Va. 1997), and reflects an unreasonable and bad-faith refusal to pay benefits owed under the Policy.

50.     Vigilant's failure to tender benefits owed under the Policy, despite the information available during the adjustment, was motivated by Vigilant's financial self-interest and demonstrates a willful, wanton, and reckless disregard of Plaintiff's contractual rights.

51.     Vigilant's conduct constitutes actual malice or a conscious, reckless, and outrageous indifference sufficient to support an award of punitive damages under West Virginia law.

52.     As a direct and proximate result of Vigilant's breaches of the Policy and bad faith claim handling, Plaintiff has suffered uncompensated losses, has been forced to initiate litigation to obtain benefits it is contractually entitled to, and has incurred attorney's fees, costs, and delay-related harm.

53.     Plaintiff is therefore entitled to recover all damages available under West Virginia law for Vigilant's breach of contract and bad faith claim handling, including: (i) payment of the covered benefits due under the Policy; (ii) consequential damages proximately caused by Defendants' denial and delay; (iii) reasonable attorney's fees, net economic loss caused by delay, and damages for aggravation and inconvenience as recognized in *Hayseeds*; (iv) prejudgment and post-judgment interest; and (v) an award of punitive damages as set forth in the Punitive Damages section below, which is incorporated herein by reference.

## COUNT III

54.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

55.     Defendants are engaged in the business of insurance and are subject to the West Virginia Unfair Trade Practices Act, W.Va. Code § 33-11-4(9) ("**UTPA**").

56.     Defendants violated UTPA, W. Va. Code § 33-11-4(9) by engaging in unfair claim settlement practices, including but not limited to:

a.      Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue (§ 33-11-4(9)(a));

b.      Failing to affirm or deny coverage within a reasonable time after proof of loss statements were submitted (§ 33-11-4(9)(e));

c.      Compelling insureds to institute litigation to recover amounts due under the Policy (§ 33-11-4(9)(g)); and

d.      Failing to promptly provide a reasonable explanation of the basis for denial or delay (§ 33-11-4(9)(n)).

57.     Defendants' violations were committed with such frequency as to constitute a general business practice.

58.     As a direct and proximate result of Defendants' violations of the West Virginia Unfair Trade Practices Act, W. Va. Code § 33-11-4(9), Plaintiff has suffered damages, including economic loss, consequential damages, and other compensatory damages recoverable under West Virginia law, and Plaintiff is entitled to recover all such damages, together with the additional relief requested in this Complaint, including the remedy of punitive damages as set forth in the Punitive Damages section below, which is incorporated herein by reference.

## PUNITIVE DAMAGES (REMEDY)

59.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

60.    The allegations set forth herein are pleaded, not as a separate cause of action, but rather solely in support of an award of punitive damages as a remedy arising from Defendants' bad faith and unfair claim settlement practices as set forth in this Complaint.

61.    Defendants' handling and denial of the Claim was willful, wanton, malicious, and/or in reckless disregard of Plaintiff's rights under the Policy and West Virginia law, including but not limited to delay, stonewalling, failure to conduct a full and fair investigation, shifting rationales for denial, and misapplication of exclusions to defeat the Policy's coverage grants.

62.    Upon information and belief, Defendants systematically employ claim-handling tactics that delay and reduce payments to insureds, such as delaying, underpaying, or denying covered claims, and requiring litigation to obtain benefits owed.

63.    Defendants' claim-handling approach routinely includes prolonged investigations, shifting rationales for denial, and demands for unnecessary information, and such tactics increase the burden and expense to insureds and function to pressure insureds to abandon or discount valid claims.

64.    These tactics are consistent with a claims strategy designed to reduce paid losses and preserve underwriting profitability, rather than to honor coverage as promised.

65.    In this case, Plaintiff submitted a covered claim for losses arising from interruption and/or impairment of water service affecting Plaintiff's operations, including losses and expenses incurred to maintain clinical operations and patient safety.

66.    Despite Plaintiff's timely notice and provision of information supporting coverage, Defendants failed and refused to promptly acknowledge and pay covered benefits.

67.    Instead of conducting a full, fair, and prompt investigation focused on the Policy terms and the facts of the loss, Defendants delayed adjusting the claim and deferred making a

11

coverage determination, including by requiring Plaintiff to await external proceedings and materials before Defendants would meaningfully act.

68.     Defendants' prolonged delay was not reasonably necessary to determine coverage because the relevant issue was whether the water service interruption and resulting loss fell within the Policy's coverage grants and whether any exclusion actually applied, all of which Defendants could and should have evaluated promptly and in good faith.

69.     Defendants' conduct was designed to postpone payment, increase frictional costs, and exhaust the insured's resources, rather than to arrive at a timely and fair coverage decision.

70.     Defendants' failure to promptly pay covered benefits forced Plaintiff to incur additional costs, expend administrative resources, and suffer continued uncertainty regarding indemnification for losses that were precisely the type of risk Plaintiff paid Defendants to insure.

71.     Defendants' actions in this case were consistent with the broader claims practices described above and constitute bad faith and unfair claims settlement practices under West Virginia law.

72.     Defendants' denial and/or delay was not based on a genuine, good-faith dispute regarding coverage, but instead was the product of cost-containment incentives, institutional priorities inconsistent with Defendants' duties to insureds, and a corporate claims culture that tolerates delay and denial tactics to reduce claim payouts.

73.     Defendants undertook this conduct with knowledge that Plaintiff, Weirton Medical Center, Inc., is a hospital providing essential services, and that delays in claim payment predictably impose outsized hardship and operational disruption, yet persisted in delay and stonewalling.

74.    Defendants' conduct demonstrates actual malice and/or a conscious, reckless, and outrageous indifference to the rights and welfare of Plaintiff, warranting punitive damages to punish Defendants and deter similar misconduct toward other West Virginia policyholders.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Weirton Medical Center, Inc., respectfully request that the Court enter judgment in its favor and against Defendants, Vigilant Insurance Company and Chubb National Insurance Company, jointly and severally, and award the following relief:

A.    An award of compensatory damages, including the insurance benefits due and owing under the Policy in the amount of $477,860.00, together with such other compensatory and consequential damages proximately caused by Defendants' breach, delay, and wrongful claim handling as are proven at trial;

B.    An award of *Hayseeds* damages, including reasonable attorney's fees, net economic loss caused by delay in settlement, and damages for aggravation and inconvenience, together with taxable costs;

C.    Compensatory and consequential damages proximately caused by Defendants' violations of the West Virginia Unfair Trade Practices Act, W. Va. Code § 33-11-4(9), including increased costs and expenses, including increased attorney's fees, attributable to such unfair claim settlement practices;

D.    Pre-judgment and post-judgment interest on all sums awarded, at the applicable legal rate(s), from the date(s) such amounts were incurred, became due and payable, or from such other date(s) as permitted by law;

E.    A declaration that the Policy provides coverage for the losses and extra expenses alleged herein, including the $477,860.00 Claimed Loss;

F.      Punitive damages in an amount sufficient to punish Defendants and deter similar misconduct, upon the requisite showing under West Virginia law; and

G.      Such other and further relief as the Court deems just and proper.

**WEIRTON MEDICAL CENTER, INC.**,
Plaintiff

By */s/ Carl A. Frankovitch*
                    Counsel

Carl A. Frankovitch, Esq. (WV ID# 12150)
Casey Jo Wynn, Esq. (WV ID# 13282)
Adriana C. DiMatteis, Esq. (WV ID #14445)
FRANKOVITCH, ANETAKIS
SIMON, DECAPIO & PEARL, LLP
337 Penco Road
Weirton, WV 26002
Tel.: (304) 723-4400
Fax: (304) 723-5892
Email: CFrankovitch@faslaw.com
          CWynn@faslaw.com
          ADimatteis@faslaw.com

14

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**WHEELING DIVISION**

**WEIRTON MEDICAL CENTER, INC.**

      **Plaintiff,**

v.

**VIGILANT INSURANCE COMPANY,**
**and CHUBB NATIONAL INSURANCE**
**COMPANY,**

      **Defendants.**

**Civil Action No. 5:26-CV-79**

**Hon. Chief Judge Thomas S. Kleeh**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing *First Amended Complaint* was

served on April 30, 2026 via the Court's e-filing system, with notice to the following:

Matthew J. Perry, Esquire
Jill E. Lansden, Esquire
Cory Lowe, Esquire
**Burns White, LLC**
720 Fourth Avenue
Huntington, WV 25701
(304) 523-5400
mjperry@burnswhite.com
jelansden@burnswhite.com
*Counsel for Defendants*

            */s/ Carl A. Frankovitch*
            Carl A. Frankovitch, Esq.

15